IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America | Cr. No. 3:17-810-CMC |
| v. | |
| SWAN NICOYIS JACKSON, | **OPINION and ORDER** |
| Defendant. | |

Swan Nicoyis Jackson ("Jackson") seeks relief pursuant to 28 U.S.C. § 2255, primarily claiming his guilty plea and conviction under 18 U.S.C. §§ 922(g)(1) and 924(a)(2), (e) for being a felon in possession of a firearm are invalid under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and therefore, should be vacated. ECF No. 63. The Government filed a motion for summary judgment in response. ECF No. 66. Jackson filed a reply. ECF No. 71. The Government filed a supplemental response, ECF No. 79, and Jackson again filed a reply, ECF No. 87. This matter is ripe for resolution.

## I.    Procedural Background

On September 6, 2017, a federal grand jury indicted Jackson on three different counts. ECF No. 2. Count 1 of the indictment ("the Indictment"), the sole count at issue in Jackson's instant § 2255 motion, charged him with being a felon in possession of a firearm, specifically charging:

> That on or about June 2, 2017, in the District of South Carolina, the Defendant, SWAN NICOYIS JACKSON, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, a firearm, that is, a SCCY Industries, model CPX-1, 9mm handgun, which had been shipped and transported in interstate commerce;
>
> In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 924(e).

*Id.* at 1.  Count 2 charged him with possession with intent to distribute a quantity of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D).  *Id.* at 2.  Count 3 charged Jackson with possessing a firearm in furtherance of a drug trafficking crime, as outlined in Count 2, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  *Id.*

On January 11, 2018, Jackson entered into a plea agreement ("the Plea Agreement") with the Government to plead guilty to Counts 1 and 2 in exchange for the Government moving to dismiss Count 3, provided he complied with all terms of the Plea Agreement.[1]  ECF No. 42. Pursuant to Federal Rule of Criminal Procedure 11 ("Rule 11"), on January 25, 2018, Jackson pled guilty to Counts 1 and 2, pursuant to the Plea Agreement.  ECF No. 45.  The district court later dismissed Count 3 on the Government's motion.  ECF No. 59.  During the plea colloquy at Jackson's guilty plea hearing, the Government gave the following recitation of the facts it would be able to show if Jackson had elected to go to trial:

> [T]he Government would be able to show that on June the 2nd, 2017, Kershaw County Sheriff's Office investigators were assisting a motorist in Elgin when a deputy on the way to work notified them that he saw two male subjects pacing around the intersection of Leslie Brown Road and Green Hill Road which is close to a neighborhood that's had several recent larceny and motor vehicle thefts.
>
> Then a sergeant with Kershaw County drove up and said he had seen two males on Watts Hill Road near railroad tracks that fit the description that the prior

---

[1] The Plea Agreement contained language whereby Jackson waived his rights to pursue an appeal or file a motion under 28 U.S.C. § 2255 with limited exceptions.  ECF No. 42 at 7-8.  The Government does not argue this waiver applies or seek to enforce it in any way.  Therefore, this court will not address the matter further.  *See United States v. Jones*, 667 F.3d 477, 486 (4th Cir. 2012) (declining to enforce *sua sponte* an appeal waiver in a plea agreement because the Government did not seek to enforce it).

deputy had given. The sergeant believed one was Mr. Jackson who deputies were familiar with due to prior arrests involving drugs and guns.

The investigators drove down Watts Hill Road and saw the two males walking down the middle of the railroad tracks. Both males started looking around as if getting ready to run and also began reaching around their waistbands and pockets and pants. They were told to stop. Each fled on foot.

The investigators gave chase and said they could smell raw marijuana coming from their direction. Eventually one of the investigators made contact and chased Mr. Jackson. Mr. Jackson fell down during the chase; and when the sergeant was able to catch him, he felt what he believed was a gun in Mr. Jackson's pants.

A subsequent search revealed an unloaded SCCY nine-millimeter handgun and 28.4 grams of marijuana which was subsequently tested in a lab and tested positive for marijuana, as well as $2300 in cash.

Mr. Jackson was then read his Miranda rights which he waived and admitted that he had bought the gun on the streets and knew he was a prohibited person but bought the gun after having some recent problems with several individuals. In addition to that, the gun was stolen. Investigation revealed the pistol was stolen two days prior to the incident. The handgun, the SCCY Model CPX-1 nine-millimeter handgun was made in Daytona Beach, Florida. So it traveled in interstate and foreign commerce.

In addition to this, before this date Mr. Jackson was convicted of a crime punishable by imprisonment for a term exceeding one year, including a possession of crack from 2013, as well as multiple distribution[] convictions from 2014. Finally, a review of South Carolina Probation, Pardon & Parole Services shows that Mr. Jackson has not received a pardon as of that date, Your Honor.

ECF No. 80 at 47-48.

Immediately following this factual recitation by the Government, the district court asked

Jackson whether he agreed that, prior to June 2, 2017, he had already been convicted of a crime

which could have carried a term of imprisonment exceeding one year. *Id.* at 48. Jackson answered

affirmatively. *Id.* Additionally, in response to questions by the district court on Count 1, Jackson

affirmatively agreed on that date he was in knowing possession of the firearm charged in the

3

Indictment and such firearm was made outside the state of South Carolina in Florida. *Id.* Notably, in conducting the plea colloquy on Count 1, the district court followed then current law and did not advise Jackson that knowledge he had been convicted of a crime punishable by imprisonment exceeding one year at the time of his firearm possession on June 2, 2017, was an element of the offense. *See United States v. Langley*, 62 F.3d 602, 604-08 (4th 1995) (*en banc*) (holding defendant's knowledge of his felony status is not essential element of offense under §§ 922(g)(1) and 924(a)(2)), *abrogated by Rehaif*, 139 S. Ct. at 2194.

A Pre-Sentence Investigation Report ("the PSR") set forth all information necessary to calculate Jackson's advisory sentencing range under the United States Sentencing Guidelines ("USSG" or "the Guidelines"). The PSR calculated Jackson's Combined Adjusted Offense Level at 30. ECF No. 51 at ¶ 62. Additionally, the PSR concluded Jackson's criminal history qualified him for application of the Career Offender enhancement under USSG § 4B1.1, which resulted in an offense level of 24 and a criminal history category of VI. *Id.* at ¶ 63. The PSR also concluded Jackson qualified as an Armed Career Criminal, providing as follows:

> The offense of conviction in <u>Count One</u> is a violation of 18 U.S.C. § 922(g), and the defendant has at least three prior convictions for a violent felony or serious drug offense, or both, which were committed on different occasions. Therefore, the defendant is an Armed Career Criminal and subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e). The offense level is 34, pursuant to U.S.S.G. § 4B1.4(b)(3)(A), as the defendant used or possessed the firearm in connection with a controlled substance offense (*Possession with Intent to Distribute a Quantity of Marijuana*).

*Id.* at ¶ 64. With a three-level decrease for acceptance of responsibility, Jackson's total offense level under the Guidelines was 31. *Id.* at ¶ 67. Jackson's criminal history category of VI combined with his offense level of 31 to produce an advisory sentencing range under the Guidelines of 188

4

to 235 months imprisonment. *Id.* at ¶ 84. Jackson made no written objections to the PSR. ECF No. 51-2.

For Jackson's young age of twenty-two at the time of his offense conduct as charged in the Indictment, he has an extensive criminal history starting at age eighteen. With respect to Jackson's criminal history, the PSR reported, *inter alia*, he had: (1) a July 2014 conviction for possession of less than one gram of cocaine base, first offense, for which he received an indeterminate sentence of imprisonment under South Carolina's Youthful Offender Act ("YOA"), S.C. Code § 24-19-50,[2] not to exceed five years, suspended on eighteen-months probation, ECF No. 51 at ¶ 29; (2) a July 2014 conviction for possession with intent to distribute a Schedule I, marijuana, or a controlled substance, first offense, for which he received an indeterminate sentence of imprisonment under South Carolina's YOA, not to exceed five years, suspended on eighteen-months probation, *id.* at ¶ 31; (3) a December 2014 South Carolina state court conviction for distribution of crack cocaine in close proximity to a school or park, for which he received an indeterminate sentence of imprisonment under South Carolina's YOA, not to exceed six years, suspended on eighteen-months probation, *id.* at ¶ 32; (4) a December 2014 South Carolina state court conviction for distribution of crack cocaine, first offense, for which he received an indeterminate sentence of imprisonment under South Carolina's YOA, not to exceed six years, suspended on eighteen-months probation, *id.*; (5) another December 2014 South Carolina state court conviction for distribution of crack cocaine, first offense, for which he received an

---

[2] The YOA permits South Carolina state courts to cap the maximum penalty for certain offenders at six years in custody. S.C. Code § 24-19-50.

indeterminate sentence of imprisonment under South Carolina's YOA, not to exceed six years, suspended on eighteen-months probation, *id.*; (6) a December 2015 South Carolina state court conviction for possession with intent to distribute marijuana, second offense, for which he received a five year sentence of imprisonment, suspended on time served (31 days), *id.* at ¶ 34; (7) a December 2015 South Carolina state court conviction for unlawful carrying of a pistol, for which he was sentenced to one year imprisonment, suspended on time served (31 days), *id.*; (8) a December 2015 South Carolina state court conviction for possession of less than one gram of cocaine base, third or subsequent offense, for which he was sentenced to five years imprisonment, suspended on time served (67 days), *id.* at ¶ 35; and (9) a December 2015 South Carolina state court conviction for possession of twenty-eight grams or less of marijuana, second offense, for which he was sentenced to one year imprisonment, suspended on time served (67 days), *id.* For each of the first five convictions listed above, on October 19, 2015, Jackson's probation was revoked for numerous probation violations, and his respective YOA sentences of imprisonment were activated. *Id.* at ¶¶ 29, 31, 32. Jackson was released from prison on June 15, 2016, and placed on a YOA intensive supervision program, which was scheduled to expire on June 15, 2018. *Id.*

On April 25, 2018, Jackson appeared for sentencing on his two federal convictions. He orally moved for a downward variance from his advisory sentencing range; a motion the district court granted. ECF Nos. 54, 55. The court sentenced Jackson to the statutory mandatory minimum of 180-months imprisonment on Count 1 and to 120-months imprisonment on Count 2, both sentences to run concurrently. ECF No. 59. The district court also sentenced Jackson to four

years' supervised release as to each count, to run concurrently. *Id.* Jackson did not file a direct appeal.

On October 23, 2019, Jackson filed the instant *pro se* motion, pursuant to 28 U.S.C. § 2255, raising the sole claim his guilty plea and conviction on Count 1 for violating §§ 922(g)(1) and 924(a)(2) are invalid under *Rehaif*, 139 S. Ct. at 2191, and therefore, should be vacated.[3] ECF No. 63. On November 13, 2019, the Government responded and moved for summary judgment, ECF No. 66, and also filed a motion to stay consideration of Jackson's § 2255 motion pending issuance of a decision by the United States Court of Appeals for the Fourth Circuit in *United States v. Lockhart*, 947 F.3d 187 (4th Cir. 2020) (orally argued Sept. 19, 2019), ECF No. 67. The Government sought summary judgment on the basis Jackson procedurally defaulted his *Rehaif* claim by failing to raise it on direct review, and he cannot demonstrate cause and prejudice or actual innocence to excuse his procedural default. ECF No. 66-1.

The court granted the Government's motion to stay the case pending a decision in *Lockhart*. ECF No. 68. The Fourth Circuit issued its decision in *Lockhart* on January 10, 2020. On February 5, 2020, Jackson filed a motion to remove his case from abeyance. ECF No. 70. He also filed a response to the Government's motion for summary judgment, only addressing the Government's argument he could not establish the prejudice prong of a cause and prejudice analysis to excuse his procedural default. ECF No. 71.

On February 13, 2020, the Government filed a second motion to stay; this time pending issuance of a decision by the Fourth Circuit in *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020)

---

[3] Jackson has remained *pro se* to date.

(orally argued December 11, 2019), *cert. granted*, No. 20-444, 2021 WL 77245 (U.S. Jan. 8, 2021). ECF No. 72. The Fourth Circuit's decision in *Lockhart* did not answer the question pending in Jackson's motion, namely, "whether a standalone *Rehaif* error requires automatic vacatur of a defendant's plea, or whether such error should be reviewed for prejudice." *Lockhart*, 974 F.3d at 196. However, on the basis a decision in *Gary* would likely answer the question, on February 19, 2020, the court denied Jackson's motion to remove the case from abeyance and granted the Government's motion to stay pending a decision in *Gary*. ECF No. 73.

The Fourth Circuit decided *Gary* on March 25, 2020, holding "a standalone *Rehaif* error satisfies plain error review because such an error is structural, which *per se* affects a defendant's substantial rights." *Gary*, 954 F.3d at 200. Thereafter, on July 7, 2020, the Fourth Circuit denied the Government's petition for rehearing *en banc*. *United States v. Gary*, 963 F.3d 470 (4th Cir. 2020).[4] The following day, the Government moved in *Gary* to stay issuance of the mandate pending the filing of any petition for *certiorari* to the Supreme Court. *Gary*, 18-4578 (4th Cir.), ECF No. 65. To date, the Fourth Circuit has not ruled on this motion, but has stayed the mandate pending further order of the court. *Id.* ECF No. 66.

In the instant case, the court subsequently directed the Government to file a supplemental pleading or otherwise inform the court such supplement was unnecessary. ECF No. 76. The Government responded by filing a supplemental response on September 11, 2020. In it, the Government elaborated on its earlier arguments asserting procedural default and Jackson's failure

―――――――――――――――

[4] Although previously included in the court's first citation to *Gary* in the instant Opinion and Order, *see supra* p. 7, the court notes the Government thereafter petitioned the Supreme Court for *certiorari*, which the Court granted. 2021 WL 77245 (U.S. Jan. 8, 2021) (20-444).

to establish cause and prejudice or actual innocence to excuse the default. Additionally, the Government argued Jackson's *Rehaif* claim fails under a harmless error analysis because any *Rehaif* error did not have a substantial and injurious effect on Jackson's conviction under §§ 922(g)(1) and 924(a)(2). The Government then went on to argue any *Rehaif* error here, even if structural, does not require automatic vacatur of the conviction. In this regard, the Government acknowledges in *Gary*, 954 F.3d at 202-03, "the Fourth Circuit recently held failure to advise a defendant facing a felon-in-possession charge during a plea colloquy the knowledge-of-status element, as required by *Rehaif*, was structural error requiring vacatur of the plea, even on plain-error review." ECF No. 79 at 21. The Government then asserts its "belie[f] *Gary* was incorrectly decided." *Id.* Next, the Government distinguishes *Gary* on the basis it "did not purport to address how structural errors are treated on collateral review." *Id.* at 22. Finally, the Government argues, even if the court granted Jackson's § 2255 motion, the appropriate remedy is not granting Jackson a judgment of acquittal, but rather vacating his guilty plea, and giving Jackson the option of going to trial or pleading guilty anew. *Id.* at 24-25.

On January 7, 2021, Jackson filed a document styled "Movant's Reply to Government's Response in Opposition to His Motion for Habeas Relief Under *Rehaif v. United States.*" ECF No. 87. Notably, Jackson did not address the Government's assertion of procedural default. Rather, Jackson jumped into a plain-error analysis under *United States v. Olano*, 507 U.S. 725 (1993), used by courts to review unpreserved errors on direct appeal. *See also* Fed. R. Crim. P. 52(b). Moreover, Jackson raised two brand-new grounds he alleges entitle him to habeas relief. The first is his contention the term "knowingly" in § 924(a)(2) also modifies § 922(g)'s jurisdictional element (*i.e.*, "in or affecting commerce"), thus requiring the Government also to

9

prove he knew the firearm he possessed had been shipped and transported in interstate commerce as alleged in the Indictment.  ECF No. 87 at 2-3.  The second new ground is his contention the jurisdictional element, as currently construed (*i.e.*, "mere passage of a firearm across state lines at some unspecified point in the past"), exceeds Congress' power under the Commerce Clause of the United States Constitution.  *Id.* at 5.

## II.  Jackson's *Rehaif* Claim

In relevant part, § 924(a)(2) provides: "Whoever knowingly violates subsection [(g)] of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2).  Always beginning with the word "who," subsection (g) of § 922 in turn has nine subsections listing nine different statuses making it "unlawful" for a person "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  *Id.* § 922(g).  Among the nine statuses listed in § 922(g) are "any person": (1) "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," *id.* § 922(g)(1); (2) "who has been adjudicated as a mental defective or has been committed to a mental institution," *id.* § 922(g)(4); or (3) "who, being an alien--(A) is illegally or unlawfully in the United States," § 922(g)(5).

In *Rehaif*, a jury convicted the petitioner-defendant ("Rehaif") of being an alien unlawfully in the United States in possession of firearms, in violation of § 922(g)(5) and § 924(a)(2).  *Rehaif*, 139 S. Ct. at 2194.  At trial, Rehaif objected to the court's jury instruction "that the 'United States is not required to prove' that Rehaif 'knew that he was illegally or unlawfully in the United States,'" at the time he possessed the firearms as alleged in the indictment.  *Id.*  The court overruled

10

the objection, the jury convicted Rehaif, and the court sentenced him to eighteen-months imprisonment. *Id.* Rehaif appealed, challenging the instruction, but the Eleventh Circuit affirmed. *Id.* at 2195. The Supreme Court granted *certiorari*. *Id.*

The *Rehaif* Court posed the question to be answered as follows: "Does [the word 'knowingly' in § 924(a)(2)] mean that the Government must prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)?" *Id.* at 2194. In the immediately following sentence, the Court answered the question by holding "the word 'knowingly' applies both to the defendant's conduct and to the defendant's status. To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* In its conclusion, the *Rehaif* Court restated its holding as follows: "[I]n a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the Defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."[5] *Id.* at 2220.

Relying on this restatement of the Court's holding in *Rehaif*, Jackson contends in his § 2255 motion that his guilty plea and conviction on Count 1 for being a felon in possession of a firearm in violation of § 922(g)(1) and § 924(a)(2) is invalid because the court failed to inform

---

[5] Citing *United States v. Langley*, 62 F.3d 602, 604-06 (4th Cir. 1995), the Fourth Circuit first recognized in *United States v. Lockhart*, 947 F.3d 187 (4th Cir. 2020), "[t]he [Supreme] Court's holding in *Rehaif* abrogated the prior precedent of this Circuit, which did not require proof of a defendant's knowledge that he belonged to the relevant category." *Lockhart*, 947 F.3d at 196.

11

him of two essential elements of the offense. Those two elements Jackson identifies as, at the time he possessed the SCCY Industries, model CPX-1, 9mm handgun as alleged in his indictment, he: (1) knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year; and (2) knew that such conviction accorded him a status barring him from legally possessing a firearm. ECF Nos. 63 at 9, 11, 11 n.17; 71 at 6. As relief, Jackson asks this court to vacate his conviction and sentence on Count 1.

The Government concedes Jackson's § 2255 motion is timely given Jackson filed it within one year of the Supreme Court's decision in *Rehaif*. ECF No. 79 at 9. The Government also "accepts that *Rehaif* is retroactive on collateral review," on the basis that the decision "narrowed the 'class of persons the law punishes.'" *Id.* (quoting *Welch v. United States*, 136 S. Ct. 1257, 1267 (2016)).

**A. Scope of a Defendant's Knowledge as Required by *Rehaif*.**

Before proceeding further in addressing Jackson's *Rehaif* claim, the court must address a threshold dispute between the parties regarding the scope of a defendant's knowledge as required by *Rehaif* in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2). To start, the Government agrees with Jackson's position that, under *Rehaif*, a defendant's knowledge of his relevant status at the time he possesses a firearm and/or ammunition is an element of an offense under § 922(g) and § 924(a)(2). So, in the case of Jackson, the Government agrees with Jackson, per *Rehaif*, as an element of the offense charged in Count 1, the Government bore the burden of proving Jackson knew, at the time he possessed the SCCY Industries, model CPX-1, 9mm handgun on or about June 2, 2017, he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year. However, in contrast to Jackson's reading of *Rehaif,* the Government does

12

not read *Rehaif* as **also** requiring it to prove Jackson **knew** his conviction for a crime punishable by a term of imprisonment exceeding one year accorded him a status barring him from legally possessing a firearm. ECF No. 79 at 17 ("[E]ven after *Rehaif*, a § 922(g)[(1)] conviction does not require knowledge of the unlawfulness of possessing a firearm as a convicted felon, but instead only knowledge that one *is* a felon."). This is so, the Government argues, because a defendant's knowledge of the unlawfulness of his action is "a burden normally reserved for statutes requiring proof of 'willfulness.'" *Id.* *See Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (reiterating general rule a defendant can be convicted of a "knowing" crime without proof he knew his conduct was unlawful, but a defendant cannot be convicted of a "willful" crime without proof he knew his conduct was unlawful), *id.* at 193 ("unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense"). *Cf.* *Cheek v. United States*, 498 U.S. 192, 199 (1991) (reiterating willfulness for purposes of criminal tax laws requires Government to prove the law imposed a duty on defendant, defendant knew of the duty, and defendant voluntarily and intentionally violated such duty).

A careful reading of *Rehaif* as buttressed by Fourth Circuit precedent before and after *Rehaif* conclusively demonstrates the Government's position, not Jackson's, is correct. To start, the question the Court posed to be answered in *Rehaif* along with the Court's immediate answer setting forth its holding in the case directly support the Government's position. *See Rehaif*, 139 S. Ct. at 2194 ("Does [the word 'knowingly' in § 924(a)(2)] mean that the Government must prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like? We hold that the word 'knowingly' applies both to the defendant's conduct

13

and to the defendant's status. To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it."). Nowhere in the question or answer does the *Rehaif* Court even hint the Government must prove a defendant knew his possession of a firearm was unlawful in addition to proving he "knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* Further, nowhere in *Rehaif* does the Court discuss or analyze whether, in a prosecution under § 922(g) and § 924(a)(2), the Government must prove a defendant knew his conduct was unlawful. This scenario is not surprising given the well-established general rule a defendant can be convicted of a "knowing" crime without proof he knew his conduct was unlawful. *Bryan*, 524 U.S. at 192 ("the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law") (internal quotation marks omitted). It is also not surprising given to accept Jackson's position would mean the Supreme Court, without any discussion or analysis, grafted onto § 922(g) and § 924(a)(2) an ignorance-of-the-law defense, which has long been normally reserved for statutes requiring proof of "willfulness." *See United States v. Gilbert*, 430 F.3d 215, 219 (4th Cir. 2005) ("Unlike a *mens rea* of willfulness, which generally requires a 'bad purpose,' the *mens rea* of knowledge in most contexts 'merely requires proof of knowledge of facts that constitute the offense.'" (quoting *Bryan*, 524 U.S. at 188)); *Yarborough v. United States*, 230 F.2d 56, 61 (4th Cir. 1956) ("Ignorance of the law is no defense to crime, except that, where willfulness is an element of the crime, ignorance of a duty imposed by law may negat[e] willfulness in failure to perform the duty."); s*ee generally*, *Cheek*, 498 U.S. at 199 ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system.").

14

Notably, the *Rehaif* Court addressed the well-known maxim ignorance of the law is no excuse in a way that made clear its holding does not interfere with the maxim's normal operation. *Rehaif*, 139 S. Ct. at 2198. The Government raised the maxim in support of its position a defendant's knowledge he was in the United States illegally or unlawfully at the time he possessed a firearm is not an element of an offense under §§ 922(g)(5) and 924(a)(2). Specifically, the Government argued "whether an alien is 'illegally or unlawfully in the United States' is a question of law, not fact, and thus appeals to" the ignorance-of-the-law maxim. *Id.* In rejecting this argument, the Court distinguished the status element identified by the Government as "what the commentators refer to as a 'collateral' question of law," which is normally not subject to the general maxim ignorance of the law is no excuse. *Id.* Armed with this distinction, the Court went on to conclude: "A defendant who does not know that he is an alien 'illegally or unlawfully in the United States' does not have the guilty state of mind that the statute's purpose requires." *Id.* Of import in the instant case, through this analysis, the Court made clear its holding regarding the knowledge-of-status element would not interfere with the normal operation of the maxim.[6]

The final circumstance in *Rehaif* supporting the Government's position regarding the scope of a defendant's knowledge under *Rehaif* is a defendant's knowledge the law prohibits him from possessing a firearm or ammunition is not one of the elements the *Rehaif* Court identifies as the four elements of a § 922(g) offense. *See Rehaif*, 139 S. Ct. at 2195-96 (identifying the four

---

[6] This conclusion is consistent with Justice Alito's observation in dissent that "the pointed use of the term 'knowingly,' as opposed to 'willfully,' in § 922(g) provides a ground to infer that Congress did not mean to require knowledge of illegality." *Rehaif*, 139 S. Ct. at 2205 (Alito, J., dissenting).

15

elements of a § 922(g) offense as "(1) a status element (in this case, 'being an alien . . . illegally or unlawfully in the United States'); (2) a possession element (to 'possess'); (3) a jurisdictional element ('in or affecting commerce'); and (4) a firearm element (a 'firearm or ammunition')")." Thus, all roads in the *Rehaif* opinion lead to accepting the Government's position on the scope of a defendant's knowledge as dictated by *Rehaif*.

Beginning with *United States v. Bostic*, 168 F.3d 718 (4th Cir. 1999), two pre-*Rehaif* Fourth Circuit decisions directly hold proof of a defendant's knowledge of the unlawfulness of his actions is not an element of a prosecution under §§ 922(g) and 924(a)(2). In *Bostic*, the defendant ("Bostic") had been convicted under §§ 922(g)(8) and 924(a)(2) for possessing a firearm while being subject to a domestic violence protective order. According to Bostic, he was entitled to notice his conduct was illegal, and therefore, §§ 922(g) and 924(a)(2) "violate the notice and fair warning principles embodied in the Fifth Amendment" to the United States Constitution. *Bostic*, 168 F.3d at 722. In rejecting this argument, the court reasoned Congress' use of the term "knowingly" in contrast to "willfully" as the *mens rea* standard in a prosecution under §§ 922(g) and 924(a)(2) means Congress did not intend to require "the defendant to be aware of the illegality of his conduct." *Id.* at 723. Further, because the record established Bostic was aware he possessed a firearm and was aware he was the subject of a domestic violence restraining order, "due process d[id] not entitle [him] to notice that his conduct was illegal." *Id.*

Just a year after *Bostic* issued, the Fourth Circuit issued its decision in *United States v. Mitchell*, 209 F.3d 319 (4th Cir. 2000). The defendant ("Mitchell") had been convicted under §§ 922(g)(9) and 924(a)(2) for possessing a firearm following his conviction of a misdemeanor crime of domestic violence. The *Mitchell* court relied on *Bostic* and the Supreme Court's decision in

16

*Bryan*, 524 U.S. at 192-93, *inter alia*, to reject Mitchell's argument "§ 924(a)(2) required the [G]overnment to prove that [he] knew that possessing a firearm was illegal." *Mitchell*, 209 F.3d at 322. The *Mitchell* court also relied on *Bostic*, *inter alia*, to reject Mitchell's Fifth Amendment due process challenge to his conviction under §§ 922(g)(9) and 924(a)(2), observing his "pleas for particularized notice . . . run headlong into the fundamental principle that 'ignorance of the law is no excuse.'" *Id.* at 323.

Fast forward to December 3, 2020, when the Fourth Circuit issued its post-*Rehaif* decision in *United States v. Collins*, 982 F.3d 236 (4th Cir. 2020), which addressed a failure-to-instruct claim under *Rehaif*. Approximately three months prior to the Supreme Court handing down *Rehaif*, a jury convicted the defendant in *Collins* ("Collins") on one count of making false statements on an ATF form, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), and one count of possession of a firearm by a person who has been committed to a mental institution, in violation of §§ 922(g)(4) and 924(a)(2). *Id.* at 240. Consistent with then Fourth Circuit precedent, the district court did not instruct the jury in order to find Collins guilty on the § 922(g)(4) count, it must find Collins knew he had been committed to a mental institution at the time of his possession of the firearm as alleged in the indictment, *i.e.*, the knowledge-of-status-element, as now required by *Rehaif*. *Id.* at 242-43. On appeal, Collins challenged as reversible error, *inter alia*, the district court's failure "to instruct the jury on *Rehaif's* knowledge-of-status element." *Id.* The *Collins* court rejected the challenge, finding the error harmless on the basis the jury necessarily made the required knowledge-of-status finding by convicting Collins on the false-statements count. *Id.* at 243. Of relevance here, specifically, the court reasoned:

> With respect to [the false-statements count], the district court instructed the jury that it must find both (1) "that the written statement indicating that the defendant has never . . . been committed to a mental institution, was false" and (2) "that the defendant knew such statement was false at the time it was given." The jury found beyond a reasonable doubt, Collins guilty [on the false-statements count]. **In doing so it necessarily found that Collins knew he had been committed to a mental institution, satisfying the knowledge-of-status element in [the § 922(g)(4) count].**

*Id.* (emphasis added). While Collins did not make a direct challenge to the district court's failure to also instruct the jury that in order to convict him on the § 922(g)(4) count, the jury had to find he knew his possession of the firearm was also unlawful, the court's analysis admits of only one reasonable conclusion. That is the scope of a defendant's knowledge as required by *Rehaif* does not extend beyond the defendant's "relevant status (that he was a felon, an alien unlawfully in this country, [had been committed to a mental institution] or the like)[.]"[7] *Rehaif*, 139 S. Ct. at 2194.

All four of the Federal Courts of Appeals outside the Fourth Circuit to have weighed in on this issue are in full accord. *See United States v. Robinson*, 982 F.3d 1181, 1187 (8th Cir. 2020) (holding *Rehaif* did not alter well-known maxim ignorance of the law (or mistake of law) is no excuse); *United States v.* Singh, 979 F.3d 697, 727-728 (9th Cir. 2020) (holding, after *Rehaif*, "the Government must prove only that [the defendant] knew, at the time he possessed the firearm, that he belonged to one of the prohibited status groups enumerated in § 922(g)"—not that "he knew his status prohibited him from owning a firearm"); *United States v. Maez*, 960 F.3d 949, 954-55 (7th Cir. 2020) ("We do not read *Rehaif* as imposing a willfulness requirement on § 922(g)

---

[7] *See United States v. Beck*, 957 F.3d 440, 450 (4th Cir. 2020) (citing *Rehaif* for observation § 922(g)(1) contains a prior conviction element, along with elements "defendant knew that he both possessed a firearm and had a prior felony conviction").

prosecutions."), *petition for cert. filed,* Nos. 20-6129, 20-6226, 20-6227 (U.S. Oct. 19, 2020); *United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019) (rejecting defendants' argument *Rehaif* required Government to prove each knew he was prohibited from possessing a firearm because he was an unlawful user of controlled substances in order to convict under §§ 922(g)(3) and 924(a)(2); "defendants' reading of *Rehaif* goes too far because it runs headlong into venerable maxim that ignorance of the law is no excuse"), *cert. denied*, 140 S. Ct. 2572 (2020).

In conclusion, based upon the text of the Supreme Court's decision in *Rehaif*, the long-standing jurisprudence regarding the well-settled distinction between Congress' use of the term "knowing" and "willful" in criminal statutes, pre and post-*Rehaif* Fourth Circuit precedent, and the weight of authority from the Sixth, Seventh, Eighth, and Ninth Circuits, the court holds the scope of a defendant's knowledge as required by the holding in *Rehaif* does not extend beyond the defendant's relevant status under §§ 922(g) and 924(a)(2), and thus does not require the Government to prove he also knew such status put him in a category of persons legally prohibited from possessing a firearm or ammunition. Accordingly, the court will proceed to address Jackson's *Rehaif* claim under this reading of *Rehaif.*

### B. The Government's Motion for Summary Judgement.

Here, the Government moved for summary judgment in its favor on the following alternative grounds: (1) Jackson procedurally defaulted his *Rehaif* claim by failing to raise it on direct review; (2) Jackson cannot demonstrate cause and prejudice to excuse his default; and (3) Jackson cannot demonstrate his actual innocence to excuse his default. ECF No. 66-1. The general rule on collateral review is a defendant's procedural default may be excused, thus allowing the court's consideration of his claim on the merits, if the defendant can show either cause for the

default and resulting prejudice or his actual innocence. *Bousley v. United States*, 523 U.S. 614, 622-23 (1998); *United States v. Fugit*, 703 F.3d 248, 253 (4th Cir. 2012). In this action pursuant to § 2255, Jackson bears the burden of proving his grounds for collaterally attacking his guilty plea and conviction by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

### 1. Jackson Procedurally Defaulted his *Rehaif* Claim.

The court agrees with the Government that under binding Supreme Court precedent Jackson procedurally defaulted his *Rehaif* claim on collateral review by failing to challenge on direct review the constitutional validity of his guilty plea to Count 1 charging him with violation of §§ 922(g)(1) and 924(a)(2), on the basis the district court misinformed him about the elements of the offense. *See Bousley*, 523 U.S. at 621-22 (holding defendant who failed to challenge on direct review constitutional validity of guilty plea to federal offense on basis the district court misinformed him about elements of the offense procedurally defaulted the claim on collateral review); *United States v. Asmer*, 2020 WL 6827829 at *5 (D.S.C. Nov. 20, 2020) (relying on *Bousley* in support of holding defendant who failed to allege *Rehaif* error on direct review from his guilty plea to one count of violating §§ 922(g)(1) and 924(a)(2) procedurally defaulted *Rehaif* claim on § 2255 motion), *appeal filed*, No. 21-6064 (4th Cir. Jan. 11, 2021); *Cherry v. United States*, 2020 WL 6480921 at *1 (E.D. Va. Nov. 4, 2020) (same), *appeal filed*, No. 21-6011 (4th Cir. Jan. 5, 2021). Thus, Jackson may raise it on collateral review in a §2255 motion only if he can first demonstrate either cause for the procedural default and resulting actual prejudice or that a miscarriage of justice would result if the court refused to entertain his collateral attack. *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999) ("In order to collaterally attack a

conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."). To demonstrate a miscarriage of justice, Jackson would have to show he is actually innocent of violating §§ 922(g)(1) and 924(a)(2) as alleged in Count 1 by clear and convincing evidence. *Murray v. Carrier*, 477 U.S. 1986, 496 (1986); *Mikalajunas*, 186 F.3d at 93. Jackson makes no claim of actual innocence.

### 2. Jackson Has Not Demonstrated Cause.

Having concluded Jackson procedurally defaulted his *Rehaif* claim on collateral review, the court now turns to consider whether Jackson can demonstrate cause for failing to raise such a claim on direct review. The existence of cause ordinarily requires the prisoner to show some objective external impediment prevented his counsel's efforts to construct or raise the claim. *Murray*, 477 U.S. at 492. As noted earlier, Jackson presents no argument on this issue. Nonetheless, he alludes to binding precedent, which at the time of Jackson's guilty plea hearing did not require the knowledge-of-status element in a prosecution under §§ 922(g)(1) and 924(a)(2). *See Langley*, 62 F.3d at 604-08 (holding defendant's knowledge of his felony status not an essential element of offense under §§ 922(g)(1) and 924(a)(2)). To the extent Jackson suggests this binding precedent prevented his counsel from raising a *Rehaif*-type claim on the basis of novelty or futility, and thus, serves to establish cause to excuse Jackson's procedural default, this court has rejected this argument in *Asmer*, 2020 WL 6827829 at *5-7 (relying on *Bousley* and *United States v. Sanders*, 247 F.3d 139 (4th Cir. 2001) to reject § 2255 movant's argument novelty of and futility of raising *Rehaif*-type claim demonstrated cause to excuse his procedural default on *Rehaif* claim).

21

*See also Wilson v. United States*, 2020 WL 4950930 at *8 (W.D.N.C. Aug. 24, 2020) (holding in context of § 2255 motion defendant could not demonstrate cause for failure to raise *Rehaif*-type claim on direct review), *appeal filed*, No. 20-7436 (4th Cir. Sep. 28, 2020); *United States v. Battle*, 2020 WL 4925678 at *5-6 (W.D. Penn. Aug. 21, 2020) (same), *appeal filed*, No. 20-2726 (3d Cir. Aug. 25, 2020); *United States v. Vasquez-Ahumada*, 2020 WL 3213397 at *3 (W.D. Va. June 15, 2020) (same); *United States v. Mayo*, 2020 WL 2476167 at *2 (W.D. Va. May 13, 2020) (same); *United States v. Bryant*, 2020 WL 353424 at *2-3 (E.D.N.Y. Jan. 21, 2020) (same). *But see Merritt v. United States*, 2020 WL 6568315 at *5 (E.D. Va. Nov. 9, 2020) (holding in context of § 2255 motion defendant demonstrated cause for failure to raise *Rehaif*-type claim on direct review but denying § 2255 motion because defendant did not demonstrate actual prejudice). As in *Asmer,* there were no objective external impediments preventing Jackson from raising a *Rehaif*-type claim on direct review. Accordingly, Jackson has not demonstrated cause to excuse his failure to raise his *Rehaif* claim on direct review.

### 3. Jackson Has Not Demonstrated Prejudice.

Because Jackson failed to demonstrate cause, he cannot avoid the procedural bar to the court considering his *Rehaif* claim on the merits in the instant § 2255 motion. Accordingly, the court need not analyze the prejudice prong of the cause and prejudice analysis. However, for the sake of thoroughness, the court will proceed to consider whether, assuming *arguendo* Jackson demonstrated cause, he can demonstrate prejudice, which requires a showing of actual prejudice. *United States v. Frady*, 456 U.S. 152, 167-68 (1982). To show actual prejudice on collateral review, a defendant must "demonstrate that the error worked to his 'actual and substantial

disadvantage,' not merely that the error created a 'possibility of prejudice.'" *Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray*, 477 U.S. at 494).

### (i) **Actual Prejudice Is Not Presumed Here.**

Relying on the Fourth Circuit's decision in *Gary*, Jackson argues he need not establish actual prejudice because of the presumed prejudice inherent in a structural error. *Gary*, 954 F.3d at 206 (holding *Rehaif* error in guilty plea context "is structural error on the ground that fundamental unfairness results when a defendant is convicted of a crime based on a constitutionally invalid guilty plea"). The Government opposes Jackson's presumed-prejudice argument on essentially two grounds. First, the Government points out the obvious difference in the procedural posture of a *Rehaif* claim raised on direct review as in *Gary* and a procedurally defaulted *Rehaif* claim raised on collateral review as here, an entirely different procedural world where the Supreme Court has long held a "prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166. Second, the Government relies by analogy on *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2012), holding a defendant who did not preserve a structural error–courtroom closure–on direct review but later raised it on collateral review in the context of an ineffective assistance of counsel claim still bore the burden of proving the prejudice prong of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668, 687 (1984); the prejudice inquiry remained unaltered. *Weaver*, 137 S. Ct. at 1905, 1913.

The opposing positions tee up the following issue: When, on collateral review, a defendant raises a procedurally defaulted claim of structural error occasioned by the district court's failure to inform him of an essential element of the offense at issue prior to his pleading guilty to such offense, is prejudice automatically presumed or must the defendant demonstrate the error worked

23

to his actual and substantial disadvantage in order to satisfy the prejudice prong in a cause and prejudice analysis?  For the following reasons, the court holds the defendant must still demonstrate the error worked to his actual and substantial disadvantage.  Accordingly, the court finds for Jackson to satisfy the prejudice prong of a cause and prejudice analysis on collateral review with respect to Count 1, he must demonstrate the district court's failure to advise him prior to his pleading guilty to Count 1 that knowledge of his felony status at the time he possessed the firearm on or about June 2, 2017 is an element of the offense worked to his actual and substantial disadvantage.

Neither the Supreme Court nor the Fourth Circuit has directly spoken on the issue of whether a defendant challenging his guilty plea and conviction on collateral review on the ground the district court failed to advise him of an essential element of the offense prior to his guilty plea is relieved of his burden to establish actual prejudice in a cause and prejudice analysis. Nonetheless, guidance the Supreme Court has provided in this area counsels strongly in favor of the Government's position.

First, the Supreme Court indirectly addressed the issue in favor of still requiring the defendant to demonstrate actual prejudice, when, in *Bousley*, it held Bousley–also alleging his guilty plea was unknowing and unintelligent based upon the district court's misinforming him as to the essential elements of the offense at the plea hearing–must demonstrate cause and actual prejudice to excuse his procedural default.  *Id.* at 622.  Although the Court never reached the prejudice prong considering Bousley's failure to demonstrate cause, nothing in *Bousley* suggests Bousley would have been home free on the prejudice prong if he had only demonstrated cause. Indeed, the majority in *Bousley* never contemplated the defendant being relieved of the burden of

24

establishing actual prejudice despite the fact Justice Stevens in his dissenting opinion in *Bousley* observed "[t]he Court has never held that the constitutionality of a guilty plea cannot be attacked collaterally unless it is first challenged on direct review." *Bousley*, 523 U.S. at 629 (Stevens, J., dissenting).  Justice Stevens then went on to explain why he would find no procedural default and remand with instructions to vacate Bousley's § 924(c) conviction and allow him to plead anew:

> Moreover, as the facts of this case demonstrate, such a holding would be unwise and would defeat the very purpose of collateral review.  A layman who justifiably relied on incorrect advice from the court and counsel in deciding to plead guilty to a crime that he did not commit will ordinarily continue to assume that such advice was accurate during the time for taking an appeal.  The injustice of his conviction is not mitigated by the passage of time.  His plea should be treated as a nullity and the conviction based on such a plea should be voided.

*Id.* at 629.  The upshot of considering the majority opinion in *Bousley* in light of this contrary position by Justice Stevens is the strong sense the reasonable extension of *Bousley* calls for the court to reject Jackson's argument he is relieved of showing actual prejudice under a cause and prejudice analysis on collateral review solely because prejudice is presumed for guilty-plea defendants who allege a *Rehaif* error on direct review.

Second, the Court's more recent decision in *Weaver* builds upon the *Bousley* Court's distinction between the routine remedy of direct review and the extraordinary remedy of collateral review and suggests the error Jackson alleges must have worked to his actual and substantial disadvantage, not a hypothetical one.  In the context of a violation of the right to a public trial, the *Weaver* Court addressed whether the prejudice inquiry in an ineffective assistance of counsel claim on collateral review is altered when the error, alleged for the first time on collateral review, is structural.  *Weaver*, 137 U.S. at 1905.  The Court held the defendant must still demonstrate prejudice to secure a new trial.  *Id.* at 1912.  In reaching this holding, the Court surveyed its

25

structural error jurisprudence.  *Id.* at 1907-12.  As part of its survey, the Court stressed "[d]espite

its name, the term 'structural error' carries with it no talismanic significance as a doctrinal matter"

and "means only that the government is not entitled to deprive the defendant of a new trial by

showing the error was 'harmless beyond a reasonable doubt."  *Id.* at 1910 (quoting *Chapman v.*

*California*, 386 U.S. 18, 24 (1967)).  The *Weaver* Court then went on to reason:

> When an ineffective-assistance-of-counsel claim is raised in postconviction
> proceedings, the costs and uncertainties of a new trial are greater because more time
> will have elapsed in most cases.  The finality interest is more at risk, . . . and direct
> review often has given at least one opportunity for an appellate review of trial
> proceedings.  These differences justify a different standard for evaluating a
> structural error depending on whether it is raised on direct review or raised instead
> in a claim alleging ineffective assistance of counsel.

*Weaver,* 137 U.S. at 1912 (internal citation omitted).

With respect to the impact of *Weaver* on the issue here, the court is informed by the Sixth

Circuit's recent reading of *Weaver* as

> stand[ing] for the idea that finality and judicial economy can trump even structural
> error; so, when a defendant raises a structural error on collateral review rather than
> on direct review, he must prove actual prejudice, even though he would not have
> had to prove actual prejudice if he had raised it on direct review.  That is because,
> if the error is one that results in fundamental unfairness (e.g., denial of counsel, no
> reasonable-doubt instruction, biased judge), actual prejudice should be easy to
> show and when a defendant raises the error immediately to the trial court, the court
> can correct the mistake; or, when it is raised on direct review, only minimal time
> will have passed, so witnesses and evidence are still available.  But when the error
> is raised on collateral review, it is a larger burden on the system and on the concept
> of fairness.

*Parks v. Chapman*, 815 F. App'x. 937, 944 (6th Cir. 2020).

The court is mindful the Fourth Circuit's opinion in *Gary* "independently f[ou]nd" *Rehaif*

"error is structural on the ground that fundamental unfairness results when a defendant is convicted

of a crime based on a constitutionally invalid guilty plea."  *Gary*, 954 F.3d at 206.  But the presence

26

of structural error alone does not require a conviction obtained by a guilty plea be vacated on collateral review. *Weaver*, 137 S. Ct. at 1912. As the Court noted in *Weaver*, "[w]hen a structural error is preserved and raised on direct review, the balance is in the defendant's favor, and a new trial generally will be granted as a matter of right." *Id.* at 1913. In contrast, "[w]hen a structural error is raised in the context of an ineffective-assistance claim [in postconviction proceedings], . . . finality concerns are far more pronounced." *Id.* Such finality concerns are particularly acute in the context of guilty pleas. *See United States v. Timmreck*, 441 U.S. 780, 784 (1979) ("the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas"). Given these prudential considerations and the fact relief from a conviction on "habeas review is an extraordinary remedy," *Bousley*, 523 U.S. at 621, obtained by a movant who must "clear a significantly higher hurdle than [what] exist[s] on direct appeal," *Frady*, 456 U.S. at 166, it is not surprising courts reviewing *Rehaif* claims on collateral review require the movant to show actual prejudice to excuse procedural default. *See United States v. Moore*, 2021 WL 302745 at *3 (W.D. Va. Jan. 29, 2021) (on § 2255 motion, relying on procedural distinction between direct review and collateral review to hold defendant must demonstrate actual prejudice resulting from *Rehaif* error in a cause and prejudice analysis despite Fourth Circuit's holding in *Gary* on direct review that *Rehaif* error is structural error resulting in presumed prejudice); *United States v. Claytor*, 2021 WL 62272 at *5 (W.D. Va. Jan. 7, 2021) (same); *Merritt*, 2020 WL 6568315 at *5 (same); *Cherry*, 2020 WL 6480921 at *2 n.2 (same). The court sees no compelling reason to deviate from this persuasive authority and established Supreme Court precedent. The court rejects Jackson's argument he need not establish he was actually prejudiced

27

by the *Rehaif* error at his guilty plea hearing in order to satisfy the actual prejudice prong of a cause and prejudice analysis.

(ii) <b>Jackson Has Not Demonstrated Actual Prejudice.</b>

To show actual prejudice on collateral review, Jackson bears the burden of demonstrating the *Rehaif* "error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" *Satcher*, 126 F.3d at 572 (quoting *Murray*, 477 U.S. at 494). In the context here, Jackson must show that but for the district court's *Rehaif* error at his guilty plea hearing, he was prejudiced by the denial of an entire judicial proceeding to which he had a right. *Cf. Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (on § 2255 motion, "when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'") (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004) (when raising a forfeited attack on guilty plea on direct review under plain error standard, defendant can only demonstrate Rule 11 error affected his substantial rights by "show[ing] a reasonable probability that, but for the error [at his plea hearing], he would not have entered the plea").

Here, Jackson makes no attempt to demonstrate the *Rehaif* error worked to his actual and substantial disadvantage. Indeed, he makes no assertion to the effect, but for the *Rehaif* error, he would not have pled guilty to Count 1 and instead would have insisted on going to trial on that count. He also makes no assertion to the effect had he gone to trial a jury would likely not have

convicted him on Count 1.  Under this state of affairs, the conclusion is foregone Jackson has failed to meet his burden of establishing actual prejudice on collateral review.

Although the court could correctly end its actual prejudice analysis here, the court notes the undisputed evidence in the habeas record powerfully corroborates this conclusion for it ably demonstrates: (1) the Government could have presented a strong case against Jackson on the missing *Rehaif* element for which Jackson had no viable defense; and (2) pleading guilty to Count 1 offered Jackson a better outcome than he most assuredly would have achieved had he gone to trial.  The Government's obligation to prove a defendant's knowledge of his felony status is not "burdensome," as "knowledge can be inferred from circumstantial evidence." *Rehaif*, 139 S. Ct. at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)).

Here, Jackson admitted in the factual basis for his plea that he had been convicted of an offense punishable by more than one year in prison.  ECF No. 80 at 48.  Additionally, at the same plea hearing, the Government proffered, without any objection by Jackson, it could have shown at trial that, after Jackson was read his *Miranda* rights immediately following the discovery of the firearm on his person, Jackson "waived" his *Miranda* rights "and admitted that he had bought the gun on the streets and knew he was a prohibited person but bought the gun after having some recent problems with several individuals."  ECF No. 80 at 47.  From this evidence a jury could have easily inferred the missing *Rehaif* element.  In addition, as noted earlier, Jackson has no less than seven South Carolina state court convictions for which he was sentenced to terms of imprisonment exceeding one year (five years each on four and six years each on three).  ECF No. 51 at ¶¶ 29, 31-32, 34-35.  For these offenses, he had not received any pardons or restoration of

29

his rights to legally own or possess a firearm.  *Id.* at ¶ 21.  Jackson's criminal record illustrates he had no viable defense to the missing *Rehaif* element.

Documents submitted by the Government in support of its motion for summary judgment further support the conclusion Jackson cannot demonstrate actual prejudice for the *Rehaif* error. The first document is a "CERTIFIED TRUE COPY" of the South Carolina Department of Corrections document Jackson signed on June 15, 2016, when he was released from prison and placed on a YOA intensive supervision program.  ECF No. 79-4.  The heading of the document is "GUN CONTROL ACT OF 1968."  *Id.*  In relevant part, the document warned Jackson: (1) part of the Gun Control Act of 1968 makes it **"UNLAWFUL"** for a person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year "to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce," (2) "if the sentence you are finishing was the result of a conviction for a <u>FELONY</u> for which the punishment that might have been given was greater than one (1) year, the <u>Gun Control</u> Act applies to you"; and (3) "It makes no difference how long you actually served if the maximum time you could have received was greater than the one (1)" year.  "For example, if you are sentenced to one (1) year suspended upon the service of six (6) months, but the maximum you could have received was three (3) years, <u>THE ACT APPLIES TO YOU</u>."  *Id.*  By signing at the conclusion of the document, Jackson acknowledged he "ha[d] been read and given a copy of the Gun Control Act of 1968" and he was "aware of and understood how this Act applie[d] to [him]."  *Id.*  The document was witnessed by a South Carolina Department of Corrections employee.  *Id.*  Additionally, particularly probative of Jackson's knowledge of the missing *Rehaif* element are sentencing sheets submitted by the Government for at least two of Jackson's prior South Carolina state court

30

convictions, to which Jackson attested via his signature, he had been committed to the South Carolina Department of Corrections for a definite term of five years, suspended with probation upon time served. ECF No. 79-2 at 1, 3. Such evidence demonstrates the Government could have presented a strong case at trial on the missing *Rehaif* element.

Not to be overlooked in the actual prejudice analysis is the fact, in exchange for Jackson's agreement to plead guilty to Counts 1 and 2, the Government agreed to and did move for dismissal of Count 3, which count carried a mandatory minimum consecutive five-year sentence. Count 3 charged Jackson with knowingly possessing a firearm in furtherance of a drug trafficking crime, "as outlined in Count 2," ECF No. 2 at 4, in violation of 18 U.S.C. § 924(c)(1)(A)(i). It carried a mandatory minimum term of five-years imprisonment "in addition to the punishment provided for" the predicate drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i), which would have run consecutively to "any other term of imprisonment imposed on," Jackson including any sentence for the predicate crime "during which the firearm was used, carried, or possessed," *id.* at 924(c)(1)(D)(ii). Thus, going to trial on Count 1 would have meant going to trial on at least Count 3 as well, exposing Jackson to an additional five-year term of imprisonment to run consecutive to whatever sentence Jackson would have otherwise received. *Dean v. United States*, 137 S. Ct. 1170, 1174-75 (2017). Furthermore, going to trial would have meant Jackson lost his three-level decrease for acceptance of responsibility, increasing his advisory sentencing range under the Guidelines to 262 to 327 months imprisonment. USSG Ch. 5, Pt. A (Sentencing Table) (2016).[8]

---

[8] Jackson was sentenced under the 2016 Guidelines Manual, effective November 1, 2016, which remained in effect through October 31, 2018.

31

When the overwhelming strength of the case the Government could have presented at trial on the missing *Rehaif* element is considered with the benefit of the bargain Jackson would have lost had he not plead guilty under the plea agreement, the likelihood Jackson would have chosen to roll the dice at trial had he known about the missing *Rehaif* element prior to his guilty plea is nil.  Most importantly, Jackson himself has not asserted he would have made this choice.[9]  Thus, Jackson has not demonstrated by a preponderance of the evidence he would have rejected the plea had the district court informed him in order to convict on Count 1 for violating §§ 922(g)(1) and 924(a)(2) the Government would have to prove at trial he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year at the time he possessed the firearm on or about June 2, 2017, as alleged in the indictment.

### III. Two Remaining Grounds for Relief.

This brings the court to Jackson's two separate grounds for relief raised for the first time in his "Reply to the Government's Response in Opposition to His Motion for Habeas Relief under *Rehaif v. United States,*" ECF No. 87: (1) the court erred by not informing him prior to pleading guilty the Government must prove he knew the firearm he possessed had been shipped and transported in interstate commerce in order to convict him on Count 1; and (2) § 922(g)(1) exceeds Congress' authority under the Commerce Clause.  These two grounds are not properly before the

---

[9] This case is easily distinguished from *Lee v. United States*, 137 S. Ct. 1958 (2017), where the defendant satisfied the prejudice prong on his ineffective assistance of counsel claim in a § 2255 motion because, although he had no real defense to the charge of possessing ecstasy with intent to distribute and would have received a lesser prison sentence by accepting a plea rather than going to trial, he had "adequately demonstrated the reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation."  *Lee*, 137 S. Ct. at 1967.

court because Jackson did not raise them initially in his § 2255 motion. By failing to raise these grounds for relief in his § 2255 motion, Jackson failed to comply with Rule 2 of the Rules Governing Section 2255 Proceedings. Rule 2 provides the motion must: (1) specify all the grounds for relief available to the moving party; (2) state the facts supporting each ground; and (3) state the relief requested. § 2255 Rule 2(b)(1)-(3). Even a cursory reading of Jackson's § 2255 motion plainly shows it did not specify either ground. To the extent Jackson would argue raising them for the first time in reply is sufficient, Rule 5 of the Rules Governing Section 2255 Proceedings stops him cold. Rule 5 limits the moving party to "file a reply to the respondent's answer or other pleading." § 2255 Rule 5(d). The Government's Response and Motion for Summary Judgment in no manner raised these grounds to which Jackson could challenge in reply.

Next, assuming *arguendo* the two grounds were properly before the court, and Jackson could somehow avoid the bar of procedural default to permit their consideration on the merits, any relief would be foreclosed by binding Fourth Circuit precedent. *See United States v. Wells*, 98 F.3d 808, 811 (4th Cir. 1996) (holding Congress did not exceed its authority under the Commerce Clause in enacting § 922(g)(1)); *Langley*, 62 F.3d at 604-06 (holding Government not required to prove defendant's knowledge of interstate nexus in a prosecution under §§ 922(g)(1) and 924(a)(2)), *abrogated on other grounds by Rehaif*, 139 S. Ct. at 2194. *See also Rehaif*, 139 S. Ct. 2196 (stating in *dicta*, because jurisdictional elements in federal criminal statutes normally have nothing to do with wrongfulness of a defendant's conduct, they are not subject to scienter presumption).

**IV. Conclusion.**

33

For the reasons set forth herein, Jackson's grounds in his § 2255 motion seeking relief from his guilty plea to and conviction on Count 1 of his Indictment fail as a matter of law. Therefore, the Government's motion for summary judgment is granted in full, and Jackson's § 2255 motion is dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee,* 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
February 23, 2021

34